S94A1703. HAMILTON v. TELFAIR COUNTY SCHOOL
DISTRICT et al.

(455 SE2d 23)

HUNT, Chief Justice.

Susan Hamilton was transferred from her position as assistant principal at Telfair County High School to the position of principal of Telfair Alternative Center. Believing that her transfer constituted a demotion, Hamilton asked for a hearing before the school board. The school board denied her request on the ground that she had in fact been promoted. Hamilton then filed a petition for a writ of mandamus to compel the school board to conduct a hearing. The trial court denied the petition, finding that Hamilton had failed to prove that she had been demoted. Hamilton appeals, and we affirm.

In order to establish that a transfer constitutes a demotion, one must show that there has been an adverse effect on one's salary, responsibility, and prestige, OCGA § 20-2-943 (a) (2) (C); *Rockdale County School District v. Weil,* 245 Ga. 730 (266 SE2d 919) (1980). Unless all three features are affected, the transfer will not be considered a demotion. Id. at 732.

In this case, Hamilton fails to establish, as a threshold issue, that she has suffered a reduction in pay. In her previous job, Hamilton had a 12-month contract including a $2,400 local vocational education supplement for total compensation of $49,126. However, the record supports the trial court's findings that had she continued in that job, she would have been reduced to an 11-month contract and would not have received the $2,400 local supplement, for a total annual compensation of $44,273.44. In her position at Telfair Alternative Center, Hamilton has an 11-month contract with total compensation of $45,671. Accordingly, having failed to show an adverse effect on her salary, Hamilton cannot demonstrate that her transfer constitutes a demotion. Therefore, we need not compare the responsibility and

prestige in Hamilton's former and present jobs.[1]

*Judgment affirmed. All the Justices concur, except Benham, P. J., and Hunstein, J., who dissent.*

BENHAM, Presiding Justice, dissenting.

I disagree with the affirmance of the trial court's judgment. Therefore, I respectfully dissent.

1. Appellant Susan Hamilton, an educator with 28½ years of experience, was notified in April 1993 that she was being reassigned from her position as assistant principal/vocational director at Telfair County High School to the position of principal of Telfair Alternative Center, the county's alternative school. Viewing the personnel move as a demotion under OCGA § 20-2-943 (a) (2) (C)[2] and being a teacher certificated by the Professional Standards Commission who had accepted at least four consecutive school-year contracts from the same local board of education, appellant sought the due process rights afforded her under the Georgia Fair Dismissal Law, OCGA §§ 20-2-940 and 20-2-942 (b).[3] When the school district denied appellant's request, she sought a hearing pursuant to OCGA § 20-2-1160 to determine whether she had, in fact, been demoted. Upon notification from counsel for the school district that the school district did not consider the transfer a demotion, appellant filed a petition for a writ of mandamus requiring the school district to afford her the hearing mandated by OCGA §§ 20-2-940 and 20-2-942 when a teacher is demoted. After holding an evidentiary hearing on the mandamus petition pursuant to OCGA § 9-6-27, the trial court denied the petition, concluding that appellant had failed to establish that the reassignment had caused her to suffer a decrease in salary or a diminishment of responsibility. By making the determination that appellant had not suffered a diminishment in salary and responsibility, the trial court implicitly

---

[1] In any event, resolution of these two prongs of the test would be for the trial court as a factfinder and if that decision were supported by any credible evidence, it would be affirmed. The word "prestige" might be somewhat ambiguous, but it is usually consistent with the idea of rank, and in that context, the office of principal would seem more prestigious than the office of assistant principal. We are also mindful of Carlyle's admonition: "All work [even manual] . . . is noble; work is alone noble. . . ." Thomas Carlyle, Past and Present, Bk. III, Ch. 4.

[2] The statute provides that a local board of education is authorized to "demote a teacher . . . from one position in the school system to another position in the school system having less responsibility, prestige, and salary." While the statute does not define "demotion," this court has viewed § 20-2-943 (a) (2) (C) as requiring reductions in responsibility, prestige, and salary in order for a transfer to be considered a demotion. *Rockdale County School Dist. v. Weil*, 245 Ga. 730, 732 (266 SE2d 919) (1980).

[3] A teacher of appellant's standing is entitled to written notice of the intention to demote her, sent by certified mail and accompanied with a statement outlining procedural safeguards available to the teacher, including the right to notice of the reasons for the action and the right to a hearing. OCGA § 20-2-942 (b) (2).

held that appellant had experienced a "transfer," a job action the school district could take without affording the affected teacher a hearing.

2. Before launching into an analysis of whether the trial court erred in denying mandamus relief, we must keep in mind that the issue before us is not whether appellant was wrongfully reassigned. Rather, the issue is whether appellant was entitled to the due process rights granted in the Georgia Fair Dismissal Law: a hearing concerning her reassignment and notice of the reasons therefor.[4] In *Ellis-Adams v. Whitfield County Bd. of Ed.*, 182 Ga. App. 463, 464 (356 SE2d 219) (1987), cert. den., 182 Ga. App. 909,[5] our Court of Appeals sought to provide "a rule that fosters observance of the procedural safeguards under the Georgia Fair Dismissal Law rather than the avoidance of them." Since due process expresses "respect enforced by law for that feeling of just treatment which has . . . evolved through centuries of Anglo-American constitutional history and civilization" (*Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U. S. 123, 162 (71 SC 624, 95 LE 817) (1951) (Frankfurter, J., concurring)), decisions in favor of the exercise of due process should be rendered whenever possible.

3. In order for appellant to be entitled to a hearing concerning the job action, she had to establish that the job action constituted a demotion, i.e., that she had suffered a decrease in salary, a decrease in prestige, and a decrease in responsibility. OCGA § 20-2-943 (a) (2) (C); *Rockdale County School Dist. v. Weil*, 245 Ga. 730 (266 SE2d 919) (1980). The trial court based its decision that appellant had not suffered a decrease in salary on its findings that appellant received more money as principal of the alternative center than she would have received had she remained an assistant principal at the county high school, and that appellant could not consider the salary supplement she had received as vocational director when comparing her current salary with her former salary.

The evidence was uncontroverted that appellant had been paid $49,126.16 in her former position, $2,400 of which came in the form of a local supplement,[6] and $45,679.87 in her new assignment. Instead of

---

[4] The Eleventh Circuit has held that the Fair Dismissal Law gives rise to a legitimate claim of entitlement to which the Due Process Clause of the Fourteenth Amendment applies. *Hatcher v. Bd. of Public Ed. &c.*, 809 F2d 1546, 1551 (11th Cir. 1987).

[5] The holding in *Ellis-Adams* serves as physical precedent only since two of the six-judge majority concurred in judgment only. Rule 35 (b), Rules of the Court of Appeals of Georgia.

[6] Under OCGA § 20-2-212, local units of school administration may supplement the legislatively-imposed salaries of certificated professional employees,

tak[ing] into consideration the nature of duties to be performed, the responsibility of the position held, the subject matter or grades to be taught, and the experience and performance of the particular employee whose salary is being supplemented.

comparing the two positions' salaries to determine whether appellant had suffered a decrease in pay, the trial court compared appellant's new salary with the salary the court determined she would have received had she remained in her former position. The trial court opined that, had appellant remained in her former position, she would not have received the optional $2,400 supplement and would have received an 11-month contract instead of a 12-month contract.[7] With those factors included, the trial court concluded that appellant's new salary was $1,400 more than what she would have been paid had she remained at Telfair County High School.

I cannot endorse the trial court's summary exclusion of the supplemental pay from consideration, and the majority's affirmance of that action. Since appellant had been the vocational director pursuant to a contract entered into by the same local board of education for four consecutive years (see OCGA § 20-2-942 (a) (4), (b) (1)), she could not be removed from that position without a hearing, since her termination as vocational director constituted a demotion as she was deprived of the supplemental pay and the prestige and responsibilities that went along with being vocational director. See OCGA § 20-2-943 (a) (2) (C). Never before has any court, state or federal, decided that local supplemental pay is not to be considered in determining whether the employee has suffered a loss in pay, and there are good reasons why no other court has taken the approach espoused by the trial court.

The trial court's method of calculation is convoluted, time-consuming, subject to manipulation by school officials, and contrary to the Fair Dismissal Law's provision of a simple, prompt, and fair method whereby teachers and certificated professional employees could challenge dismissals and demotions. As to the matter of a convoluted procedure, the employee, before requesting a due process hearing, must determine what portion of her salary in her former position was state-mandated, and what portion, if any, was supplemented by the local school system. The employee must then determine if the local school system intends to provide the same supplement for that position for the following year. If so, the employee must then determine whether the school system will change its mind as to whether the employee meets the qualifications for receiving the supplement. Such clairvoyance on the part of the employee is nonsensical since the employee would have to make a determination as to the school board's budget for the next school year before the school board itself had made such a determination.

---

[7] Under *Ellis-Adams*, supra, the decreased working hours brought about by a shorter contract is evidence of a decrease in salary.

Promptness would also be lost in the process. Under the Fair Dismissal Law, there are time requirements that must be met by both the school board and the employee who seeks a hearing thereunder. OCGA § 20-2-942 (b) (2) requires a teacher notified of the intention to demote the teacher to request a hearing, and within 14 days thereafter, the local school board must furnish the teacher with written notification of the cause(s) of the demotion, the names of witnesses and a concise summary of the evidence; the time and place of the hearing; the availability of compulsory process to require witness attendance or document production.

The greatest victim under the approach allowed by the trial court is fairness. The school board may discriminatorily manipulate the supplemental pay in such a way as to thwart an employee's right to a due process hearing, in direct contrast to the intent of the Fair Dismissal Law, which contemplated a common-sense approach easily understandable by ordinary people. Common sense dictates that if an employee is making less money in her current position than what she made in her previous position, that employee has suffered a decrease in pay.

Taking instruction from *Rockdale County School Dist. v. Weil*, supra, our Court of Appeals considered the issue of whether the reduction of salary element had been satisfied in *Ellis-Adams*, supra. There, the court held:

[I]n determining whether a decrease in pay has taken place, we must look to the totality of the circumstances to see whether there has been a measurable adverse impact on the employee's pay. Determining factors must go beyond mere cosmetic changes, and may include but are not limited to failure to provide normal increments of pay, downward adjustments in pay, decreased working hours, and decreases in employee benefits.

Id. at 465. In *Hatcher v. Bd. of Public Ed. &c.*, 809 F2d 1546, 1548, 1550, n. 9 (11th Cir. 1987), the United States Court of Appeals for the Eleventh Circuit opined that a Georgia teacher had suffered a decrease in salary since her retirement entitlement would be impacted by the fact that, in her new position, she would only receive a fixed percentage of future raises instead of the full raise to which she had been entitled in her former position. Thus, more than a comparison of appellant's current salary with what she would have purportedly made had she not been reassigned is necessary to determine whether appellant has suffered a decrease in salary.

4. The other prong of the three-part test for demotion addressed by the trial court was responsibility. The trial court found that appel-

lant was upgraded from the position of assistant principal to principal, and that her responsibilities increased at her new position because she had "total responsibility for a facility whereas in her previous position she was subordinate to her principal at Telfair County High School and did not have responsibility for an entire facility." The fact that appellant's current position at the alternative school was formerly held by a teacher, not someone with appellant's administrative ability and background, shows that the position to which appellant was assigned involved less responsibility than the one she had previously held. In addition, appellant placed in evidence without objection an extensive document comparing the responsibilities of her new position with those of her former job. The most striking example of the diminishment of appellant's responsibilities is that she formerly assisted in the supervision of thirty staff members and now supervises two; that she formerly assisted in the supervision of the school's instructional program for 480 students, and now supervises a 12-student program; that she formerly evaluated lesson plans of 31 classroom teachers, and she now performs that task for one classroom teacher. Testimony from the school superintendent that appellant's new job was rated higher than her former job by the school board and that he considered the new position to be more responsible is subjective evidence which does not outweigh the cold, hard facts outlined above.[8] The trial court erred when it determined that appellant had not established that her re-assignment had resulted in a decrease in responsibility.

5. Although the trial court did not reach the "loss of prestige" prong of the demotion test, the record is replete with information showing appellant suffered a severe loss in prestige. In her present job she must help mop floors, clean the lunchroom, work with the inmates from a nearby correctional institute, and work with children with attendance, discipline, and health problems. Under any measuring scale, appellant has suffered a dramatic loss in prestige.

Because the trial court erred in determining that appellant had not been demoted and was therefore not entitled to the due process statutorily guaranteed her, the judgment should be reversed with direction that the trial court enter judgment requiring the school district to conduct the hearing mandated by OCGA § 20-2-943 (a) (2) (C).

I am authorized to state that Justice Hunstein joins this dissent.

---

[8] When questioned as to the issue of responsibility, the superintendent admitted that the alternative school position was less responsible when he stated: "We know the alternative system is not as good as the regular school. There's no point in arguing that."

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 30, 1995.

*Mills & Chasteen, Ben B. Mills, Jr.,* for appellant.
*McNatt, Greene & Thompson, Richard S. Thompson,* for appellees.