A03A1919. IN RE BUTTERFIELD.
(595 SE2d 588)

MILLER, Judge.

A trial court held attorney Torris Butterfield in direct criminal contempt for failing to reorganize his cross-examination of the State's key witness and for failing to complete his cross-examination of the witness within a specified time limit. Butterfield appeals, arguing that he ended the cross-examination when the court indicated the time had expired and that the order to reorganize his cross-examination questions was unenforceably vague. We agree and reverse.

"The appropriate standard of appellate review for a criminal contempt conviction is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *In re Healy*, 241 Ga. App. 266, 268 (526 SE2d 616) (1999).

So construed, the evidence shows that Butterfield was defending a client against various criminal charges of murder, aggravated assault, and cruelty to children. These charges arose out of the torture and death of a child, with whose mother Butterfield's client had cohabited. The mother (a co-defendant) pled guilty to reduced charges and testified against Butterfield's· client, claiming that he had abused the mother and that he had apparently burned and struck the child, which led to the child's death.

On cross-examination, Butterfield sought to show that the mother herself had committed the assaults and that her testimony was biased by self-interest and by her guilty plea agreement. He then

asked her in painstaking detail about numerous inconsistencies between her varied statements to police, caseworkers, and physicians, which statements contradicted each other and her trial testimony. Following three and one-half hours of this cross-examination, the trial court at the end of the first day asked Butterfield how much longer the examination would continue, to which he responded that he did not know, that he had more versions to cover, and that he hoped to be done by lunch the following day.

The next morning, the court told Butterfield the following:

> Mr. Butterfield, you're going to have to reorganize. I'll give you another hour-and-a-half, and then you are finished absent a showing for the court. . . . I believe another hour-and-a-half is well within the court's discretion to limit you. . . . I wanted to give you some guidance before we began that you will need to reorganize your approach so that you complete your cross-examination within the next hour-and-a-half.

Butterfield indicated that he would attempt to satisfy the court, but that the witness had made so many statements that such may not be possible and that he hoped the court would not cut off the cross-examination. The court stated: "You will be cut off in approximately one-and-one-half hours. You are hereby ordered to organize your cross. . . . And I hereby order you to complete your cross-examination in about an hour-and-a-half. . . . And I understand you object and except to the court's ruling."

Butterfield conducted another hour of cross-examination, continuing to pursue the numerous inconsistencies between the mother's testimony and her statements to others. During this time, the State repeatedly objected to the examination as repetitive, which objections the court overruled. The court at one point even instructed Butterfield to slow down his questions. The court eventually told Butterfield "to group some of your questions" to move things along.

After this hour had transpired, the court warned Butterfield that he had only 30 minutes remaining and suggested that he needed to reorganize. Butterfield continued to ask the mother about more inconsistencies. The State continued to object to Butterfield's method of cross-examination, which objections the court overruled. Indeed, the court indicated its concern that Butterfield may have "skipped some parts" in a statement being covered with the mother.

After the hour and a half had expired, the court informed Butterfield that his time was up and that the court "believe[d] that it was your intent all along to ignore the court's ruling, to not comply with the court's instructions, and that you have intentionally left major

areas after the time expired." The court instructed him that he could complete the subject matter under discussion and asked him to identify any other areas he wished to cover. Butterfield listed five additional areas. The court concluded that Butterfield had "intentionally disregarded this court's orders" and announced that it intended to cite him for criminal contempt. The court scheduled a contempt hearing for the end of the day and gave Butterfield an additional 25 minutes to complete his cross-examination. Butterfield replied that he would try to comply with the court's request, although he objected to same. When the 25 minutes expired, Butterfield discontinued the cross-examination although he desired to cover more areas.

At the contempt hearing, the court indicated that it believed that Butterfield had intentionally refused to follow the court's order on cross-examination, specifically its direction that he complete his cross-examination in an hour and a half. The court indicated its dissatisfaction with the pace of the examination, which pace did not change after the court had imposed the time limit. The court expressed frustration that major issues were not covered until near the end of the time period and told Butterfield that his failure to complete his cross-examination was his own strategic decision.

Butterfield responded that he did not wilfully disobey the court's order to reorganize his cross-examination. The court immediately corrected Butterfield and stated that the order was not to reorganize but was simply to complete the cross-examination within an hour and a half, with the method left up to his discretion. Butterfield rephrased his statement, contending that he did not wilfully disobey the order to finish within the specified time frame and that he was merely trying to be an effective advocate by focusing in a methodical fashion on important impeachment issues such as the numerous inconsistencies in the mother's various statements given to others. He noted that when he attempted to use a more truncated cross-examination method, he was less effective. Thus, he simply tried to cover as many of the major issues as possible.

Finding that Butterfield's statement lacked credibility, the court noted that since Butterfield had saved "crucial parts" of his cross-examination to raise after the time limit had expired, he had consciously disregarded the court's order. The court found him in wilful criminal contempt and fined him $250. Butterfield now appeals.

Based on our review of the record as summarized above, we discern that there were two aspects of the trial court's orders to Butterfield regarding his cross-examination. First, the court ordered Butterfield to complete his cross-examination of the witness within an hour and a half. Second, the court ordered Butterfield to "reorganize"

his cross-examination so as to accomplish this task.[1] Inasmuch as Butterfield challenges the court's contempt order on both of these aspects, we address them below.

1. When the court indicated that the court-extended time limit had expired, Butterfield ceased his cross-examination. Thus, no evidence supports the court's finding that Butterfield wilfully disobeyed the court's order to complete his cross-examination within the time specified. The fact that Butterfield may have desired to ask additional questions, or that the court felt some areas had not been adequately covered or covered only at the end, is of no consequence. To sustain a contempt conviction in a summary contempt proceeding, "objectively observable and describable behavior that causes an articulable interference with the administration of justice must be demonstrably present." (Citation omitted.) *Healy*, supra, 241 Ga. App. at 268. Setting aside that an attorney's desire to cover additional areas hardly seems to fit "objectively observable and describable behavior," we hold that such a desire certainly does not articulably interfere with the administration of justice where the attorney ceases to question the witness when so ordered by the court. We simply fail to apprehend how the court's integrity or its operations are adversely or deleteriously impacted when an attorney, who complies with the court direction to end the cross-examination at a specified time, continues to harbor the desire to ask additional questions.

2. The second aspect of the court's order was the direction to Butterfield to "reorganize" his cross-examination approach so that he completed his cross-examination within the hour and a half specified. At the contempt hearing, the court accused Butterfield of violating this direction by leaving for the end issues "which [the court] considered to be fairly major." The court's finding of contempt on this aspect of its order is erroneous for at least two reasons.

First, Butterfield ended his questioning of the witness when the court indicated that his time was up. As set forth in Division 1 above, we fail to see how Butterfield's behavior adversely impacted the court's operations or interfered with the administration of justice.

Second, the order to "reorganize" was too indefinite and vague to be enforced. "Before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties thereby imposed upon him, and the command must therefore

---

[1] In its written contempt order, the trial court criticizes Butterfield's cross-examination as repetitive, detailed, harassing, and as delving into generally irrelevant matters. Yet nowhere in its orders to Butterfield regarding cross-examination did the court indicate that such was the basis for its desire to limit the length of the cross-examination, and in fact during that cross-examination, the court repeatedly overruled the State's objections that were based on these very grounds.

be express rather than implied." (Citation omitted.) *Todd v. Casciano*, 256 Ga. App. 631, 638 (3) (569 SE2d 566) (2002); see *Earthgrains Baking Co. v. Bird*, 255 Ga. App. 817, 818 (1) (567 SE2d 59) (2002). Thus, "[i]ndefiniteness and uncertainty in a judgment, decree, or order may constitute a good defense in proceedings for contempt based on the violation of such judgment, decree, or order." *Todd*, supra, 256 Ga. App. at 638 (3), quoting *Hughes v. Browne*, 217 Ga. App. 567, 568 (1) (459 SE2d 170) (1995).

We hold that an order to reorganize one's cross-examination approach is simply too vague to be the basis for a contempt order. It does not lend itself to a finding of "objectively observable and describable behavior" that is in violation of the court's order. One man's trash is another man's treasure. Butterfield's strategic determination as to what areas of cross-examination were most important may have differed from what areas "[the court] considered to be fairly major," but such hardly constituted grounds for finding that Butterfield wilfully disobeyed an order to "reorganize" his cross-examination, where such "reorganization" would clearly be a subjective undertaking. Indeed, the court recognized the fallacy of its order at the contempt hearing when it backtracked and suddenly announced that it did *not* order Butterfield to reorganize but rather simply to complete the cross-examination within the hour and a half specified. The court stated, "How you were going to do it I left to your discretion as a good lawyer." We agree that the manner in which the cross-examination was organized was more properly left to Butterfield's discretion, and Butterfield's exercise of that discretion in a manner different from what the court would have exercised cannot be grounds for finding that he wilfully violated a court order.

*Judgment reversed. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED FEBRUARY 20, 2004.

*Steven E. Phillips*, for appellant.
*Paul L. Howard, Jr.*, District Attorney, *Bettieanne C. Hart, Marc A. Mallon*, Assistant District Attorneys, for appellee.